[Civ. No. 32350. Second Dist., Div. Two. Jan. 14, 1969.]

JAMES O. REIMEL, as Director, etc., Plaintiff and Appellant, v. LEVERETTE D. HOUSE, as Chairman, etc., et al., Defendants and Respondents.

Thomas C. Lynch, Attorney General, and Stephen H. Silver, Deputy Attorney General, for Petitioner and Appellant.

Charles P. Just for Defendants and Respondents.

HERNDON, J.—Following administrative hearings, the Department of Alcoholic Beverage Control, hereinafter referred to as the "Department," adopted the findings and

recommendation of the hearing officer and issued its order revoking the on-sale liquor license of Ivery L. Bryant. The licensee appealed to the Alcoholic Beverage Control Appeals Board, hereinafter called the "Board."

In due course the Board rendered its decision reversing the order of the Department. The Department thereupon filed in the superior court its petition seeking the writ of mandate to require the Board to vacate certain portions of its decision which were adverse to the decision of the Department.

The trial court ordered the issuance of the alternative writ, but after a hearing in which all parties in interest participated, the court rendered its judgment denying the peremptory writ. The appeal of the Department from this judgment is now before us. It should be observed at this point that to the extent that respondent Board reversed the order of the Department, it is the decision of the Board and not the decision of the Department that was the subject of judicial review in the court below. (*Martin* v. *Alcoholic Beverage etc. Appeals Board,* 52 Cal.2d 238, 244-245 [340 P.2d 1].) The decision of the Board reversing the order of the Department rests upon a holding that the Department erred in receiving into evidence a deposition which contained substantial testimony deemed essential to prove certain of the violations of which the licensee had been accused.

The principal question now presented for our consideration is this: Did the Board and the trial court err in holding that the deposition in question was inadmissible and improperly received in evidence by reason of the fact that it had been taken before a certified shorthand reporter and notary public other than the one named in the petition for the order requiring the witness to appear and testify? We have concluded that the deposition was properly received and that the Board and the trial court erred in their holdings to the contrary.

The only provision governing *the manner* in which depositions shall be taken for use in administrative proceedings is found in Government Code section 11511. It is there provided that "On verified petition of any party, an agency may order that the testimony of any material witness residing within or without the State be taken by deposition *in the manner prescribed by law for depositions in civil actions.*" (Italics added.)

Concerning the petition itself, and its contents, section 11511 further provides: "The petition shall set forth the

nature of the pending proceeding; the name and address of the witness whose testimony is desired; a showing of the materiality of his testimony; a showing that the witness will be unable or can not be compelled to attend; and shall request an order requiring the witness to appear and testify before an officer named in the petition for that purpose. Where the witness resides outside the State and where the agency has ordered the taking of his testimony by deposition, the agency shall obtain an order of court to that effect by filing a petition therefor in the superior court in Sacramento County. The proceedings thereon shall be in accordance with the provisions of Section 11189 of the Government Code.''[1]

When section 11511 was enacted in 1945 (Stats. 1945, ch. 867, § 1, p. 1631), former Code of Civil Procedure section 2024 governed the manner in which the deposition of a witness residing out of this state was to be taken, and former Code of Civil Procedure section 2031 governed the taking of depositions of witnesses within this state.[2] Out-of-state depositions required the issuance of a commission directed to a designated person while local depositions might be taken before any person authorized to administer oaths.

Reading and construing these statutes together, it appears reasonably certain that the requirement of Government Code section 11511 that an officer before whom the testimony was to be taken be named in the petition was designed to facilitate the obtaining of a commission issued by the superior court in the event that one should be required, rather than to establish an entirely new rule regulating the manner in which local depositions were to be taken. This interpretation is confirmed by the following quotation from the Tenth Biennial Report (1944) Judicial Council of California, pages 18-19, regarding this section:

[1]Section 11189 of the Government Code provides: ''In any matter pend·· ing before him a department head may cause the deposition of persons residing within or without the State to be taken by causing a petition to be filed in the Superior Court in the County of Sacramento reciting the nature of the matter pending, the name and residence of the person whose testimony is desired, and asking that an order be made requiring him to appear and testify before an officer named in the petition for that purpose. Upon the filing of the petition the court may make an order requiring the person to appear and testify in the manner prescribed by law for like depositions in civil actions in the superior courts of this State. In the same manner the superior courts may compel the attendance of persons as witnesses, the production of papers, books, accounts, and documents, and may punish for contempt.''

[2]Code of Civil Procedure sections 2018-2024 presently regulate these matters.

"Procedure for taking depositions both within and without the State is provided by Sec. 12. [Gov. Code, § 11511.] Depositions are used so rarely in administrative proceedings that the problems connected with them are not of first importance. The parties are not given an absolute right to obtain depositions for, if the right were absolute, the parties could delay a hearing pending the taking of the deposition of a witness whose testimony was claimed to be necessary. A deposition may be taken, however, where a witness is unable or can not be compelled to attend for any reason and this provision is more liberal than that used in civil cases. Out-of-state depositions are available but a court order is required because many States enforce commissions to take depositions only if they issue from the courts of a sister State. After ordering an out-of-state deposition, therefore, the agency must file a petition before the Superior Court in Sacramento County. This provision imposes no hardship on the respondent because he merely makes his application to the agency which must file the petition for a court order. No undue hardship is imposed on the agencies because almost all have offices in Sacramento. This procedure is derived from Political Code, Sec. 353 [Gov. Code, § 11189], the provisions of which are incorporated by reference in the proposed statute."

In the instant case a petition was filed requesting an order for the taking of the deposition of one Ralph Head. Although the deposition was to be taken within this state, the petition, in conformity with Government Code section 11511, named "Miss De Lorenzo Notary-Reporter" as the officer before whom the testimony was to be given. An order was issued in the form of a "commission" to the person named in the petition although there is no provision of the Code of Civil Procedure requiring such an appointment and no provision of the Government Code authorizing an agency to grant such a "commission," i.e., the power to confer upon a person not otherwise entitled to administer oaths the authority so to do.

However, regardless of the propriety of the form of the Department's order granting the petition, such order was made and notice thereof given to the licensee involved in the pending accusation. The licensee and her counsel attended the taking of Head's deposition and participated therein by way of cross-examination. Various objections were made by the licensee relating to the sufficiency of the notice given and the adequacy of the cross-examination under the circumstances.

The record does not reveal whether or not such fact was

then known to the licensee but the officer before whom the deposition was taken was not Miss DeLorenzo but was a Miss Patricia S. Newton who was also a certified shorthand reporter and notary public. However, this fact unquestionably was disclosed prior to the time the deposition was offered into evidence at the administrative hearing, since the single document on which appeared the ''Verified Petition, etc.,'' the ''Order, etc.,'' the ''Certificate and Return'' was attached to the deposition and the indicated inconsistency was revealed on its face. In addition, in arguing other points before the hearing officer, counsel for the licensee made reference to Miss Newton by name.

At the hearing the licensee urged all objections to the deposition which she had previously enunciated at the time of its taking, but at no time did she question either the authority or the qualifications of the officer before whom it was taken. Her objections were rejected and the deposition was received in evidence.[3]

Thereafter, as indicated, the licensee sought the Board's review of the resulting order of the Department and for the first time urged the technical point that the notary-reporter before whom the deposition had been taken was not the notary-reporter named in the petition and order. The Board sustained this objection and ruled that the deposition should not have been received in evidence and that in its absence the evidence was insufficient to sustain the Department's decision. The trial court denied the Department's petition for writ of mandate, holding that the Board had properly construed Government Code section 11511. However, it also made the following findings:

''(1) The deposition of Ralph Head was taken before a notary public and therefore, in this respect, was taken in the manner provided by law for depositions in civil actions;

''(2) Ivery L. Bryant did not object to the deposition on the specific ground that it was not taken in accordance with the requirements of section 11511 of the Government Code, because it was not taken before the officer named in the petition to take the deposition, at the time the deposition was offered and admitted in evidence. The notary taking the depo-

---

[3]We have considered these objections and find them to be without merit. Certainly when the offer of the hearing officer to permit further examination of the deponent by written interrogatories was rejected by the licensee, her objections to receipt of the deposition were properly overruled.

sition was at no time identified during the deposition proceeding.''

We have concluded that the decision of the Board was in error and the writ of mandate should have issued as prayed. The rule of strict construction once placed on statutes relating to depositions (*Dye* v. *Bailey,* 2 Cal. 383, 384) has long since changed in California. (Code Civ. Proc., § 4, enacted in 1872.) However, even at the time when the strict rule applied, the fact that a local deposition was taken by one other than the person named in the notice was deemed an inconsequential irregularity.

■ ''The statute does not require that the notice should specify the officer before whom the deposition is to be taken, and public convenience would seem to demand that in the [event of the] sickness or absence of the officer designated, any other empowered by law might be substituted. Notice of the time and place having been given, it would certainly be a matter of small importance who should take the deposition, particularly in view of the inconvenience and delay which would result from a different rule.'' (*Williams* v. *Chadbourne* (1856) 6 Cal. 559, 561.)

■ After the Legislature's enactment of the rule that all code provisions and all proceedings thereunder ''are to be liberally construed, with a view to effect its objects and to promote justice'' (Code Civ. Proc., § 4), this rational view, naturally, has continued. (*Bollinger* v. *Bollinger,* 153 Cal. 190, 195-196 [94 P. 770]; *King* v. *Green,* 7 Cal.App. 473, 478 [94 P. 777].)

It must be borne in mind, of course, that in the instant case the licensee has never claimed that it suffered the slightest prejudice by reason of the fact that the ''notary-reporter'' was a Miss Newton rather than a Miss DeLorenzo. Miss Newton's qualifications (Code Civ. Proc., § 2018, subds. (a) and (c)) have never been challenged nor is the accuracy of her reporting in issue. ■ In addition, it is *the reading and signing* of a deposition *by the deponent* that renders it his testimony, rather than its mere recordation by a reporter (*Voorheis* v. *Hawthorne-Michaels Co.,* 151 Cal.App.2d 688, 692 et seq. [312 P.2d 51]). The parties herein stipulated at the close of Mr. Head's deposition that it might ''be signed before any notary public with the same force and effect as though read, signed, and corrected [in] the presence of the notary public before whom it was taken.'' It was so executed and notarized.

 Although we do not mean to be understood as holding that such an objection would have been valid, we believe that it is not without significance that at the time of the administrative hearing herein, the licensee made no objection to the receipt of the deposition on any ground relating to the identity of the person before whom it had been taken.[4] There is no question but that the licensee knew that Miss Newton had taken the deposition since his counsel mentioned her name in argument. However, he at no time urged that the validity of the deposition was in anywise affected by the fact that she was not the Miss DeLorenzo specified in the notice served upon his licensee many months earlier, and whose purported "commission" was attached to the deposition itself and indicated on its face that it had been executed by Miss Newton rather than Miss DeLorenzo.

 An issue not raised before the trier of the fact ordinarily cannot be urged for the first time upon appellate review. (*Glendale Unified School Dist.* v. *Vista Del Rossmoyne Co.*, 232 Cal.App.2d 493, 496-497 [42 Cal.Rptr. 899]; 3 Cal. Jur.2d, Appeal and Error, § 140, p. 604, § 142, p. 607.)

 In the event, since the appeals board exercises a "strictly 'limited'" power of review over the Department's "'exclusive power' to issue, deny, suspend or revoke licenses" (*Martin* v. *Alcoholic Beverage etc. Appeals Board, supra,* 52 Cal.2d 238, 246), the decisions of the Department should not be defeated by reason of "any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the [reviewing body] shall be of the opinion that the error complained of has resulted in a miscarriage of justice." (Cal. Const., art. VI, § 13.)

 As previously indicated, the licensee has never claimed that the *mere identity* of the qualified person who took the deposition in the instant case in any way affected its accuracy or reliability. Although the respondent Board and the licensee note that there was some reference in the deposition to the fact that the reporter was under time pressure that day, it is clear that this fact had no effect upon the licensee's

---

[4]Code of Civil Procedure, section 2021, subdivision (b), provides: "Objection to taking a deposition because of disqualification of the officer before whom it is to be taken is waived unless made before the taking of the deposition begins *or as soon thereafter as the disqualification becomes known or could be discovered with reasonable diligence.*" (Italics added.)

decision to terminate cross-examination.[5] Of course, if a party were to be denied his right to adequately cross-examine a deponent by reason of the time schedule of the reporter, the error would lie in the deprivation itself rather than the name and identity of the reporter.

The judgment is reversed with instructions to the trial court to issue the peremptory writ of mandate as prayed.

Roth, P. J., and Fleming, J., concurred.

---

[5]Counsel for the licensee expressly stated that the reason he was terminating his cross-examination of the deponent was because ''I have no further questions.'' His observation that he *might have had* further questions if he had had more notice of the deposition and the opportunity to examine certain police records was pure speculation and quite unrelated to the schedule of the reporter or the deponent.