NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2392-13T4

ESTATE OF PATRICIA GRIECO, by its
administrator VINCENT GRIECO, and
VINCENT GRIECO, individually,

        Plaintiffs-Appellants,

    v.

HANS J. SCHMIDT, M.D. and ADVANCED
LAPAROSCOPIC ASSOCIATES,

        Defendants-Respondents.

_____

> APPROVED FOR PUBLICATION
>
> May 19, 2015
>
> APPELLATE DIVISION

Submitted April 14, 2015 — Decided May 19, 2015

Before Judges Fisher, Nugent and Manahan.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-10061-09.

Emolo & Collini, attorneys for appellants (John C. Emolo, on the brief).

Marshall Dennehey Warner Coleman & Goggin, P.C., attorneys for respondents (Robert T. Evers and Walter F. Kawalec, III, on the brief).

The opinion of the court was delivered by

FISHER, P.J.A.D.

In this medical malpractice action, plaintiffs — the estate and husband of the late Patricia Grieco — appeal an interlocutory order barring witnesses from recounting what

Patricia said her doctor's staff told her in response to her complaints of chest pains following surgery. Because the trial judge, in applying N.J.R.E. 804(b)(6), concluded the statements were untrustworthy — without having listened to the witnesses testify at a N.J.R.E. 104 hearing — we reverse.

The circumstances surrounding this evidence question are relatively simple. On November 2, 2007, defendant Hans J. Schmidt, M.D., performed laparoscopic gastric banding surgery on Patricia, who, within a few days of surgery, telephoned and visited defendant Schmidt's office to complain of chest pains. On November 9, 2007, Patricia suffered a pulmonary embolism; she remained on life support until her death ten days later.

Plaintiffs filed a complaint asserting that defendants' negligence caused Patricia's death. Following discovery, a jury was sworn on December 3, 2013, and opening arguments were scheduled to begin the next day. Before the trial proceeded beyond jury selection, however, the judge entertained plaintiffs' motion to admit testimony from Patricia's husband, three children, other relatives and a friend pursuant to N.J.R.E. 804(b)(6), which permits, in civil cases, admission of "a statement made by a person unavailable as a witness because of death if the statement was made in good faith upon declarant's personal knowledge in circumstances indicating that

it is trustworthy." Plaintiffs assert that Patricia told these potential witnesses, immediately after either a telephone call or visit to defendants' office, that in the days after surgery she was experiencing chest pain, that she told Schmidt's staff she was experiencing chest pain, and that she was told by Schmidt's staff that her pain was a normal complication of surgery caused by gas.[1]

After hearing argument, but without reading the deposition testimony of the witnesses, the judge denied plaintiffs' request for a <u>Rule</u> 104 hearing and for the most part[2] denied plaintiffs' motion to admit the proposed hearsay testimony. The judge labeled the testimony about what Patricia was told by Schmidt's staff as "classic double hearsay" that should be excluded because defendants would not be able to challenge the statements through cross-examination and because there was "no mechanism to ensure [] trustworthiness." The judge concluded by stating:

> my ruling in this case is certainly, for
> example, Mr. Grieco can say that he observed
> [Patricia] having chest pain or that she
> told him that she had chest pain. But any

---

[1] The proposed testimony would have included Patricia's statement that she was told by defendant's staff that she should purchase Gas-X for her chest pains. Plaintiffs planned to corroborate this testimony with evidence that one witness saw "Gas-X" listed at the top of Patricia's shopping list.

[2] The judge did not bar witnesses from recounting Patricia's complaints of chest pains.

> communication in terms of what . . .
> [Patricia] said that she told to someone
> else and what that someone else then
> responded to her, that information is double
> hearsay and cannot be . . . testimony in
> this trial.

The judge further explained that "[t]he part [of the testimony that] could not overcome the hearsay exception was the part of the conversation between [Patricia] and whoever it is she's having the communication with at the office of Dr. Schmidt." In response, plaintiffs argued those statements — made by an unidentified individual over the telephone and Kathleen Connor, a bariatric nurse, during an office visit — were admissible pursuant to N.J.R.E. 803(b)(4).[3] Additionally, plaintiffs maintained all Patricia's statements were trustworthy because they were made within a very short time after her communications with Schmidt's staff. The judge concluded that a lack of "corroborating evidence pertaining to the truthfulness" precluded admissibility of those statements allegedly made by Schmidt's staff. The judge therefore barred testimony that Patricia "told [potential witnesses] that the office staff told her to take Gas-X."

---

[3]N.J.R.E. 803(b)(4) permits admission of otherwise inadmissible hearsay where the evidence is offered against a party and is "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship."

On December 20, 2013, an order was entered barring plaintiffs from introducing evidence:

> concerning any statements that [Patricia] may have made to third parties as to what was told to her by the "unknown employee" of [] defendant during the phone calls of [November 6] and as to what was told to her by [] defendant's bariatric nurse . . . during her office visit on [November 8].

On January 6, 2014, the judge granted plaintiffs' request to voluntarily dismiss the case without prejudice — and certified that order as final, citing Rule 4:42-2 — while also, among other things, setting the stage for a resumption of the proceedings in the trial court should we determine the evidence ruling was incorrect.[4]

Plaintiffs then filed this appeal, seeking our review of the December 20 order. Plaintiffs argue that the hearsay statements as to what Patricia told the proposed witnesses she was told by defendant's staff were admissible or, if there were doubts about the trustworthiness of such statements, that the judge should at least have conducted a Rule 104 hearing.[5]

---

[4] For example, in the event we were to reverse, the dismissal order memorialized defendants' waiver of a statute-of-limitations defense, plaintiffs' waiver of pre-judgment interest accruing during the intervening time period, and both parties' waiver of the right to conduct further discovery.

[5] We briefly pause to express our chagrin about the manner in which "finality" was achieved in the trial court. Nevertheless,

(continued)

It is helpful to start with the fundamental concept that hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.J.R.E. 801(c). Unless falling within one of the many stated exceptions, hearsay is inadmissible. N.J.R.E. 802; State v. Long, 173 N.J. 138, 152 (2002). The prohibition on hearsay is intended to "ensure the accuracy of the factfinding process by excluding untrustworthy statements, such as those made without the solemnity of the oath, and not subject to cross-examination . . . or the jury's critical observation of the declarant's demeanor and tone." State v. Engel, 99 N.J. 453, 465 (1985); see also Neno v. Clinton, 167 N.J. 573, 579 (2001).

Plaintiffs argue that one such hearsay exception is applicable here, namely, the exception contained in N.J.R.E. 804(b)(6), which we quoted above. To qualify for this exception:

---

(continued)
because we think it highly likely we would have granted leave to appeal after entry of the December 20 order — had leave been sought — we proceed to consider the merits of the appeal. We cannot stress, however, the importance of the parties actually applying to this court for leave to appeal instead of concocting ways in the trial court to give an interlocutory order the appearance of finality. See Grow Co. v. Chokshi, 403 N.J. Super. 443, 457-60 (App. Div. 2008).

A-2392-13T4

(1) the declarant must be dead; (2) the statement must have been made in good faith; (3) the statement must have been made upon the declarant's own personal knowledge; and (4) there must be a probability from the circumstances that the statement is trustworthy.

[DeVito v. Sheeran, 165 N.J. 167, 194 (2000).]

In considering the application of this rule, the judge "must make particularized findings of good faith, personal knowledge, and trustworthiness[.]" Ibid.; see also Jeter v. Stevenson, 284 N.J. Super. 229, 233-34 (App. Div. 1995).

Here, in the absence of further examination of the evidence in question by way of a Rule 104 hearing, we must conclude that, on the face of the proposed testimony, all four criteria favored admission. Patricia is deceased. Her statements were ostensibly made in good faith.[6] The statements she conveyed to

_____

[6] Along these same lines, N.J.R.E. 803(c)(3) permits admission of "[a] statement made in good faith of the declarant's then existing state of mind, emotion, sensation or physical condition (such as . . . mental feeling, pain, or bodily health) . . . ." These types of statements are considered to have been made in good faith "when made in a natural manner and under circumstances dispelling suspicion and involving no suggestion of sinister or improper motives . . . ." State v. Thornton, 38 N.J. 380, 390 (1962). In a dental malpractice case, we found that testimony from a plaintiff's mother and a friend that the plaintiff had complained of pain after a dental procedure should have been admissible pursuant to N.J.R.E. 803(c)(3) because the plaintiff spoke to those witnesses the day of and the day after undergoing the procedure and the statements were made "under circumstances that do not suggest anything other than good
(continued)

others were apparently within her personal knowledge.  And the circumstances suggest the trustworthiness of the evidence; that is, there is no apparent reason for Patricia to have misrepresented to her husband or to other family members or friends how she felt, the pains she claimed to have experienced, what she said to her doctor or his staff, and what she was told in response.

As Judge Keefe explained in <u>Beckwith v. Bethlehem Steel Corp.</u>, 185 <u>N.J. Super.</u> 50, 63 (Law Div. 1982), in applying the predecessor to <u>N.J.R.E.</u> 804(b)(6), "an absolute standard of trustworthiness is not essential before evidence is admissible." It is only necessary that the trial judge find, in engaging in a subjective analysis, "a probability that the statement is trustworthy from the flavor of the surrounding circumstances." <u>Ibid.</u>  The Supreme Court later adopted this standard in <u>DeVito</u>, <u>supra</u>, 165 <u>N.J.</u> at 195.  In engaging in this analysis, the trial judge may consider: "whether the statement was made under oath; the duration of the time between the event and the statement; whether the declarant had firsthand knowledge; and the

_____

(continued)
faith," notably the plaintiff "spoke to people one would naturally voice concerns to."  <u>Roper v. Blumenfeld</u>, 309 <u>N.J. Super.</u> 219, 235-37 (App. Div. 1998).

credibility of the declarant." <u>Id.</u> at 195-96 (citing 2 <u>McCormick on Evidence</u> § 324 (5th ed. 1999)).

It suffices to say the judge erred by declining to listen to the witnesses before concluding their testimony was untrustworthy or that the circumstances suggested that Patricia's statements were untrustworthy. Even examining the proposed testimony in light of the parties' arguments, it is clear the judge did not consider "the time between the event and the statement," which plaintiffs argue was "virtually contemporaneous," nor any evidence that might illuminate or serve to discredit Patricia's credibility, all factors that warranted attention. <u>DeVito</u>, <u>supra</u>, 165 <u>N.J.</u> at 195-96.[7]

Indeed, the judge's reasoning boils down to her imposition of a requirement not present in the applicable rule. That is, the judge determined that "what's untrustworthy and what makes [the testimony] not fall within a hearsay exception is there is no corroborating evidence on any level to establish what [Patricia] said in the phone call to the individual in the

---

[7]The judge did consider that one witness proposed to testify that Patricia referred to Connor as a nutritionist instead of what she was, a bariatric nurse, as suggesting unreliability. Although this discrepancy may be worthy of consideration when determining the trustworthiness of the proposed testimony, it was not sufficiently conclusive to negate the need for a <u>Rule</u> 104 hearing.

office and what that individual said to her."[8]  N.J.R.E. 804(b)(6) does not include a corroboration requirement. Although "lack of corroboration may affect the weight to be given" to testimony by the fact-finder, it does not bar its admission.  Spencer v. Bristol-Meyers Squibb Co., 156 N.J. 455, 466 (1998).  Here, Patricia uttered consistent statements nearly contemporaneously or within hours of her communication with the doctor's staff.  On their face and in light of the circumstances, these statements appear trustworthy.  They could not be excluded absent a "particularized finding" that they lacked trustworthiness, which could not be reached without a Rule 104 hearing.  DeVito, supra, 165 N.J. at 194.

We lastly note the so-called "hearsay within hearsay" problem cited by the judge does not bar the admission of statements attributed by Patricia to defendant's staff.  In fact, the circumstance would have been better described as

_____

[8]This reasoning was based in part on the judge's examination of the notation "[n]o current complaints" inserted in Patricia's medical chart regarding her November 8 office visit.  It is not clear to us why the judge would exalt a note defendants unilaterally placed in their file over what the patient recounted to her husband or others about how she felt and what she was told after she called the doctor's office to complain of chest pains.  In other words, defendant's staff memorialized what transpired with Patricia by making a note in her file; Patricia memorialized what transpired with defendant's staff by repeating the advice given to family and friends.  It is not clear why the former should be viewed as evidence superior to the latter.

"admissible hearsay within hearsay." If she was living at the time of trial, Patricia would have been permitted to recount the statements of defendant's staff pursuant to N.J.R.E. 803(b)(4), because those statements were attributed to "[defendant's] agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship" and were "offered against" that party. See Spencer, supra, 156 N.J. at 462; In re Opinion 668 of the Advisory Comm. on Prof'l Ethics, 134 N.J. 294, 300 (1993). Because Patricia did not live to recount these conversations in court, the judge was simply required to consider the admissibility of this admissible hearsay through application of N.J.R.E. 804(b)(6). See Estate of Hanges v. Metro Pop. & Cas. Ins. Co., 202 N.J. 369, 375 n.1 (2002) (observing that admissibility of hearsay within hearsay requires that each level of hearsay have "a separate basis for admission into evidence"); see also N.J.R.E. 805.

In reversing, we are mindful that ordinarily a judge's decision to conduct a Rule 104 hearing is discretionary. Kemp v. State, 174 N.J. 412, 432 (2002). But the judge could not exclude the testimony in question without conducting a hearing to examine the trustworthiness of the hearsay statements. Accordingly, to the extent the decision to conduct a Rule 104

hearing in this instance was discretionary, the judge's refusal to require the hearing constituted an abuse of discretion.

The order under review is reversed. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2392-13T4